634 P.2d 10

**HECLA MINING COMPANY, a corporation, El Paso Natural Gas Company, a corporation, and Noranda Lakeshore Mines, Inc., a corporation, Plaintiffs/Appellants,**

v.

**DEPARTMENT OF REVENUE, a Department of the State of Arizona, Board of Tax Appeals, Division One, an agency of the State of Arizona, Jim L. Turnbull, County Treasurer of Pinal County, C. E. McKee, County Assessor of Pinal County, and Pinal County, a political subdivision of the State of Arizona, Defendants/Appellees.**

No. 2 CA–CIV 3896.

Court of Appeals of Arizona, Division 2.

July 7, 1981.
Rehearing Denied Sept. 2, 1981.
Review Denied Sept. 22, 1981.

Twitty, Sievwright & Mills by John F. Mills, Phoenix, for plaintiffs/appellants.

Robert K. Corbin, Atty. Gen. by James D. Winter, Asst. Atty. Gen., Phoenix, for defendants/appellees.

## OPINION

HATHAWAY, Chief Judge.

The appellants have brought this appeal to challenge the trial court's granting of summary judgment in favor of appellees and its denial of appellants' cross-motion for summary judgment. The case involves the classification of appellants' property by the appellee Department of Revenue as a "producing mine" for the year 1979.

Appellants Hecla and El Paso Natural Gas Company obtained the lease on the Papago Indian Reservation land from the Papago tribe on August 17, 1976, covering a portion of the reservation upon which the Lakeshore Mine was situated. Production was commenced by appellants in April 1976, at Lakeshore Mine, was terminated in August 1977, and was never resumed. In addition to having the August 17, 1976, leased property, appellants owned the lot in the Valley Industrial Park for a railroad siding. The lot was situated near Casa Grande and was not a part of the reservation. On October 31, 1978, appellants Hecla and El Paso surrendered and terminated the August 17, 1976, lease and advised the Papago tribe that all property would be removed except buildings and other permanent improvements. On that same date, the tribe and Hecla and El Paso entered into an agreement whereby the tribe was granted an option to purchase the removable personal property and the Valley Industrial Park for $9.45 million within a five-month period from the date of the agreement. In return, after the five-month period, appellants had one year to remove the personal property.

Noranda Exploration, the parent company of appellant Noranda Lakeshore Mine, Inc., entered into an agreement with the Papago tribe and appellants Hecla and El

Paso to purchase the removable personal property on March 7, 1979. On April 1, 1979, Noranda and the Papago tribe entered into a mining lease on the Lakeshore Mine and a business lease. Pursuant to their agreement, Hecla and El Paso and Norando were to split the 1979 ad valorem taxes that were to be assessed by the department of revenue. The department assessed the removable personal property and the Valley Industrial Park as a "producing mine" at 60% of full cash value while appellants maintain that such property should be assessed as commercial property at 25% of full cash value. The taxes for the 1979 year were paid under protest and appellants filed suit to recover those monies.

Appellants do not question the right of the department to tax their removable personal property. However, they argue that the classification of their property as a "producing mine" for 1979 is in error. The state bases its contention on the legislative definition of a "producing mine or mining claim," which is contained in A.R.S. Sec. 42–201(6), which was in effect at the time this matter arose. That subparagraph states:

"In this chapter, unless the context otherwise requires:

\* \* \* \* \* \*

'Producing mine or mining claim' means any mine or mining claim from which any coal, mineral or mineral substance, other than clay, sand, gravel, building stone or any mineral or mineral substance normally processed into artificial stone has been extracted for commercial purposes at any time during a period of three years prior to the first Monday in January of the tax year." [1]

In *Arizona Department of Revenue v. Cyprus-Bagdad Copper Co.*, 122 Ariz. 505, 596 P.2d 31 (1979), the taxpayer mine had an operating mine, whereas appellants had no mine as of November 1, 1978. In the *Cyprus-Bagdad Copper Co.* mine situation, the department of revenue treated the per-

1. A.R.S. Sec. 42-201 has been amended and A.R.S. Sec. 42-201(8) now contains the definition of a producing mine or mining claim changing the three-year period to a one-year period.

sonal property as part of the taxpayer's producing mine; this was upheld by our supreme court. The opinion states:

"The words of a statute will be interpreted in their ordinary sense unless it appears from context that a different meaning was intended. *Castregon v. Huerta*, 119 Ariz. 343, 580 P.2d 1197 (1978). The context in which the word 'mine' is used in the above statute does not suggest a meaning beyond that ordinarily conveyed by the words used. A 'mine' is any excavation made for minerals. (Citations omitted)" 122 Ariz. at 507, 596 P.2d 31.

The court pointed out that the statute defined a producing mine as any mine from which minerals had been extracted during a period of three years prior to the tax year. It was the court's holding that the size and method of extraction of ore are not relevant to the determination of what is a producing mine under the legislative definition. Implicit in that holding, however, is that there be a mine of some size and that there be some method of extraction of ore that would be relevant to the determination of what is a producing mine under A.R.S. Sec. 42–201(6).

In *Pima County v. American Smelting and Refining Co.*, 115 Ariz. 175, 564 P.2d 398 (1977), we stated that an entire piece of mine property could not be assessed as a producing mine inasmuch as only part of the property was being used in conjunction with a producing mine and that the rest of the property should be assessed at a commercial or industrial property rate. In the record before us, appellants did not use any of the property classified as a "producing mine" in relation to a mine, producing or otherwise, after October 31, 1978.

The question remaining, then, is the constitutionality of the application of A.R.S. Sec. 42–201(6), which classified appellants' property for the tax year 1979 as a "producing mine" by virtue of an irrebuttable presumption that the property remained a pro-

ducing mine because it had been so used within the prior three-year period.[2]

■ Without an adequate basis for the irrebuttable presumption's existence, we find that it is in contravention of the due process clause of the Fourteenth Amendment. A state is forbidden to deny due process of law or equal protection of the law for any purpose whatsoever. *Schlesinger v. Wisconsin*, 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557 (1926). In *Heiner v. Donnan*, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932), the supreme court held that where an irrebuttable presumption attempts by legislative fiat to enact into existence a fact that does not exist in actuality, it cannot be upheld. The court said that more than once it had struck down a statute that created a presumption that operated to deny a fair opportunity to rebut, as violative of the due process clause of the Fourteenth Amendment. The three-year irrebuttable presumption that A.R.S. Sec. 42–201(6) established cannot be upheld in light of the facts of this case, which show that for the tax year in question appellants were not mining on the Lakeshore property. Appellees argue that the state has two rational bases to uphold the classification established in the statute: (1) To provide a measuring device to reduce the difficulty in determining when a mine has ceased as a producing mine, since confusion exists as to its status during the suspension of operations due to fluctuations in copper prices and labor problems; and (2) to reduce the financial burden upon a small community when a mine stops production and the community's tax base is affected. Such reasoning, we think, provides no rational basis to support the presumption.

The summary judgment in favor of appellees is hereby vacated and the cause is remanded with directions to enter summary judgment in favor of the appellants.

HOWARD and BIRDSALL, JJ., concur.

---

**2.** We note that the three-year valuation period now appears to be contained in A.R.S. Sec. 42–124(B), effective January 1, 1981.